IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:  5:13cr18/WS/EMT
                                                   5:17cv152/WS/EMT

HECTOR HERNANDEZ
        Reg. No. 68595-179

---

## REPORT AND RECOMMENDATION

This matter is before the court upon an amended "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," filed by Defendant Hector Hernandez (ECF No. 260).    The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.    *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).    After a review of the record, as well as the arguments presented in the motion, the Government's response thereto, and Hernandez's reply (ECF Nos. 268, 271), the undersigned recommends that the motion be denied without an evidentiary hearing.    *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## PROCEDURAL BACKGROUND

On April 16, 2013, Hernandez was charged in a two counts of a three-count indictment with conspiracy to possess with intent to distribute five hundred grams or more of methamphetamine ("Count One") and possession with intent to distribute 500 grams or more of methamphetamine on a date certain ("Count Two"), all in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) (ECF No. 46).   Co-defendants Raymundo Reyes-Barragan, Ruben Heredia-Barron, and Alejandro Barron-Soto were also charged in Counts One and Two of the indictment.[1]   The Government filed a notice of its intent to seek enhanced penalties based on Hernandez's prior federal drug conviction (ECF No. 52).

Before trial, appointed defense counsel Jonathan Dingus, Esq., successfully moved to suppress statements made by Hernandez to law enforcement after his arrest (ECF Nos. 71, 73).   The defense then moved to suppress evidence seized during a warrantless search of Hernandez's cell phone and the fruits of that allegedly unlawful search (ECF No. 84).   The court denied the motion after a hearing, finding

---

[1] Alejandro Barron-Soto was the lone defendant charged in Count Three—illegal reentry of a previously deported alien (ECF No. 46).

that exigent circumstances justified the search (ECF No. 114).[2]    Hernandez also moved in limine to exclude evidence of his prior (2006) drug trafficking conviction (*see* ECF Nos. 83, 87, 88).[3]

The trial of co-defendant Heredia-Barron was severed upon the Government's motion due to its intent to introduce inculpatory statements made by Heredia-Barron concerning co-defendants Hernandez and Barron-Soto (*see* ECF Nos. 89, 96, 104). Both Heredia-Barron and Reyes-Barragan ultimately pleaded guilty (ECF Nos. 99–102, 140–143).

After a three-day trial, a jury found defendants Hernandez and Barron-Soto guilty as charged (ECF Nos. 192, 193, 195).    The jury also specifically found that the offenses involved 500 grams or more of a mixture or substance containing methamphetamine (ECF No. 132).

In the final Presentence Investigation Report ("PSR") Hernandez was held accountable for a total of 3 kilograms of methamphetamine; his total offense level

---

[2] On appeal, the parties agreed that this conclusion was made in error, in light of the Supreme Court's subsequent decision in *Riley v. California*, 134 S. Ct. 2473 (2014) (*see* ECF No. 241 at 8). The district court's ruling was later upheld, however, based on the independent source doctrine (ECF No. 252 at 10–13).

[3] At trial the evidence was introduced over objection (ECF No. 192 at 202–16).    The district court's ruling in this regard was upheld on appeal (*see* ECF No. 252 at 14–16).

was 34[4] (ECF No. 155, PSR ¶¶ 42, 50).   With a criminal history category of III, the applicable guidelines range would have been 188 to 235 months, but this range was superseded by the statutory mandatory minimum term of twenty-years imprisonment (PSR ¶¶ 89, 90).   The court sentenced Hernandez to concurrent terms of 240-months imprisonment on Counts One and Two (ECF Nos. 164, 172, 173).

On appeal, the Eleventh Circuit remanded the case to the district court to determine whether law enforcement was "prompted by" or would have sought a search warrant for Hernandez and Barron-Soto's cell phones despite the initial warrantless search of the co-defendants' phones (ECF No. 241 at 12).   The judgment and conviction were affirmed following the limited remand (ECF Nos. 251, 252).   The instant motion is timely.

## FACTUAL BACKGROUND

The following facts relevant to consideration of Hernandez's claims are taken from the Eleventh's Circuit's opinion.   *United States v. Barron-Soto, et al.*, 820 F.3d 409 (11th Cir. 2016) (also found at ECF No. 252).

---

[4] Hernandez received no adjustments for his role in the offense, so his base offense level and total offense level were the same.

On the morning of March 17, 2013, law enforcement officers were conducting surveillance at the Cancun's restaurant in Chipley, Florida. DEA Special Agent John Manna ("Agent Manna") was in contact with a confidential informant who arranged a delivery of methamphetamine to the restaurant with defendant Reyes-Barragan. During surveillance, agents witnessed defendants Barron-Soto and Heredia-Barron arrive at Cancun's in a red Mazda and defendant Hernandez and a female companion arrive in a silver Volkswagen. The defendants exited the vehicles and walked to the rear of the restaurant. Barron-Soto confirmed to Reyes-Barragan that the expected methamphetamine was present, and agents next observed Hernandez drive the silver Volkswagen behind the restaurant. Another defendant entered the Volkswagen and lights flashed, leading law enforcement to believe there was a manipulation of an electronic concealed trap occurring in the vehicle. After ten minutes, Barron-Soto and Heredia-Barron departed in the red Mazda and Reyes-Barragan told the informant over the phone that the methamphetamine was delivered.

Florida Highway Patrol stopped Heredia-Barron and Barron-Soto at Agent Manna's request. Barron-Soto attempted to flee from the vehicle but was apprehended by officers. A drug dog subsequently alerted to the odor of narcotics in the red Mazda. Heredia-Barron and Barron-Soto's cell phones were seized. Meanwhile, Hernandez and the female companion exited the restaurant in the opposite direction, driving the silver Volkswagen. Florida Highway Patrol, again at Agent Manna's direction, stopped the Volkswagen and detained Hernandez and the female companion.

Law enforcement next made contact with Reyes-Barragan at the rear of the restaurant and obtained consent to search the restaurant. The search uncovered six containers that contained approximately 3.6 kilograms of methamphetamine inside a storage shed at the restaurant. Hernandez, the female companion, and the silver Volkswagen were brought back to the restaurant where a drug dog alerted to narcotics around the vehicle. Law enforcement officers found an empty hidden

trap used to hide drugs near the rear passenger seat of the Volkswagen. Agent Manna directed another agent to conduct a warrantless search of the cell phones seized from Hernandez and Barron-Soto during their arrests, citing concerns that other conspirators remained at large and could remotely erase data from the phones. Officers took photographs of the observations of the cell phones during the search, including text messages, incoming and outgoing calls, and numerous contacts between the four indicted defendants—Hernandez, Reyes-Barragan, Barron-Soto, and Heredia-Barron.

Agent Manna later applied for and received a search warrant to search the content of all four defendants' phones . . . . The warrant affidavit did not mention any evidence obtained during the warrantless search of Hernandez and Barron-Soto's cell phones. The affidavit did include post-arrest statements made by the four defendants and the results of a warrantless search of Reyes-Barragan's cell phone.

(ECF No. 252 at 3–6.)

## ANALYSIS

### General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing." *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014). Moreover, collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is

otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States*, 365 F.3d at 1225, 1234–35 (11th Cir. 2004); *Bousley v. United States*, 523 U.S. 614, 621 (1998).   Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a section 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.   *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).   In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.

*Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted);

*Chandler*, 218 F.3d at 1315.    When reviewing the performance of experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."    *Chandler*, 218 F.3d at 1316 n.1

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.    "The likelihood of a different result must be substantial, not just conceivable."    *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).    For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."    *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).    A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."    *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

To establish ineffective assistance, a defendant must provide factual support for his contentions regarding counsel's performance.    *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).    Bare, conclusory allegations of ineffective

assistance are insufficient to satisfy the *Strickland* test.    *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)).    Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.    *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).    This is true regardless of whether the issue is a trial or sentencing issue.    *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel);    *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel

need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is

abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop‑Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation

marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.    *Lynn*, 365 F.3d at 1239.    Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

### Hernandez's Specific Claims for Relief

On the § 2255 motion form, Hernandez purports to identify two claims for relief.    In Ground One, he claims both trial and appellate counsel were constitutionally ineffective, and in Ground Two he claims a "Due Process Violaiton [sic]—Petitioner's Prior Conviction," perhaps claiming that the court's consideration of his prior conviction at sentencing was a violation of his due process rights.    Instead of providing supporting facts for either claim on the form, he merely refers the court to the attached memorandum.    The memorandum, however, includes no facts or argument relevant to either a claim of ineffective assistance of appellate counsel or to his due process claim, and as such there is no basis for the court to address either contention.[5]

---

[5] Hernandez's due process claim, to the extent it is properly raised, is without merit.    When sentencing a defendant, the district court may rely upon the fact of a prior conviction that was neither admitted by a defendant nor proved to a jury.    *United States v. Camacho-Ibarquen*, 410 F.3d 1307, 1316 (11th Cir. 2005) (per curiam) ("the government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions" before a district court may use those convictions to enhance a sentence); *see also United States v. Booker*,

In the supporting memorandum the only clear, "stand alone" claim for relief raised by Hernandez is an ineffective assistance of trial counsel claim, based on defense counsel's failure to file a motion to sever Hernandez's trial from the trial of co-defendant Barron-Soto, despite Hernandez's request that counsel do so.    In what appears to be sub-claim, Hernandez alleges trial counsel prevented him from testifying or otherwise would not allow him to testify at trial (or, similarly, that the lack of a severed trial "prevented" him from testifying (*see, e.g.*, ECF No. 271)).

## 1. Severance

Hernandez maintains that counsel was constitutionally ineffective for failing to move to sever Hernandez's trial from that of co-defendant Barron-Soto, whom Hernandez describes as much more culpable.    Hernandez asserts that once he told counsel of his own limited role in the offense, counsel should have immediately filed a motion to sever.    He argues he was prejudiced due to guilt by association with the alleged ringleader of the conspiracy, and if he had been tried separately he could

---

543 U.S. 220, 244 (2005) ("Any fact (other than a prior conviction") which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt).    To the extent Hernandez's claim is based on the district court's admission of evidence relating to the prior conviction at trial, this issue was decided on appeal, and thus Hernandez is procedurally barred from raising the claim here.    *See, e.g., Stoufflet v. United States*, 757 F.3d 1236, 1242 (11th Cir. 2014).

Case Nos.: 5:13cr18/WS/EMT; 5:17cv152/WS/EMT

have shown that his role in the conspiracy was merely that of a "runner" or "mule," resulting in a lesser sentence (ECF No. 260 at 19–20).    Hernandez asserts if his trial had been severed he would have testified on his own behalf and been able to produce the testimony of other witnesses, including Barron-Soto, who would have corroborated Hernandez's position that was not a full-fledged co-conspirator, but only a courier.

The Eleventh Circuit has recognized that there is a "solid body of law favoring joint trials and placing a heavy burden on those who want to be tried separately." *United States v. Lopez*, 649 F.3d 1222, 1233 (11th Cir. 2011).    Generally, persons who are charged together should also be tried together.    *Id.* at 1234; *United States v. Chavez*, 584 F.3d 1354, 1359–60 (11th Cir. 2009); *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007).    The rule favoring joint trials is "even more pronounced in conspiracy cases" such as this one.    *Lopez*, 649 F.3d at 1234.

Federal Rule of Criminal Procedure 14(a) provides for relief from "prejudicial joinder," but a defendant seeking a severance has a "heavy burden of demonstrating [that] compelling prejudice would result from a joint trial.    *Lopez*, 649 F.3d at 1234 (quoting *Browne*, 505 F.3d at 1268) (quotation marks omitted)).    To show the compelling prejudice required to warrant severance, a defendant must show that a

joint trial would result in actual prejudice and that neither jury instructions nor some other remedy short of severance will suffice to protect against the prejudice. *Id.* (citing *Zafiro v. United States,* 506 U.S. 534, 539–41 (1993); *United States v. Blankenship*, 382 F.3d 1110, 1122–23 (11th Cir. 2004)).

"Anything that increases the likelihood of a conviction 'prejudices' the defendant in the ordinary sense of the word, but in severance law 'prejudice' is not used in the ordinary sense of the word." *Lopez*, 649 F.3d at 1234. Defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials. *Zafiro*, 506 U.S. at 540. Even mutually antagonistic defenses are not prejudicial *per se*. *Zafiro*, 506 U.S. at 538. A severance must be granted "only if there is a serious risk that a joint trial would either 'compromise a specific trial right of one of the defendants' or 'prevent the jury from making a reliable judgment about guilt or innocence' even if limiting instructions are given." *Lopez*, 649 F.3d at 1234–35 (quoting *United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005) (quoting *Zafiro*, 506 U.S. at 539)); *Browne*, 505 F.3d at 1269, *Blankenship*, 382 F.3d at 1122).

While it is a rare request for a severance that should be granted, four types of prejudicial joinder may require a severance under Rule 14, namely, where: (1) the

defendants rely upon mutually antagonistic defenses; (2) one defendant would exculpate the moving defendant in a separate trial, but will not testify in a joint setting; (3) inculpatory evidence is admissible against one defendant but not against another, or conversely if a joint trial would prevent a defendant from introducing exculpatory evidence that would be admissible in a separate trial; and (4) a cumulative and prejudicial "spill over" effect may prevent the jury from sifting through the evidence to make an individualized determination as to each defendant, such as in cases involving a large number of defendants with differing culpability. *Chavez*, 584 F.3d at 1360–61 (citations omitted); *see also Lopez*, 649 F.3d at 1235. The decision of whether to grant a severance is highly fact specific and is left to the discretion of the district court.    *Lopez*, 649 F.3d at 1236 (citations omitted).

Hernandez's closing argument at trial was that the Government had not proven beyond a reasonable doubt that he was involved in any conspiracy, and that it was entirely possible that he was an "innocent dupe" who was merely at the scene (ECF No. 193 at 12–16).    He also argued there was no proof he had knowingly possessed methamphetamine or that he had any intent to distribute (*id*. at 16–17). Barron-Soto's defense was also based on insufficiency of the evidence and thus was not "mutually antagonistic" to Hernandez's defense.

As previously noted, Hernandez claims that co-defendant Barron-Soto and unnamed others would have testified in a separate trial that Hernandez was merely a courier, but he offers no proof in support of his claim, such as a proffer of the testimony he believes would have been offered or an affidavit from any of the witnesses.[6]   Moreover, his argument seems to be based, at least in part, on a misguided belief that a courier cannot be convicted as part of a conspiracy.   *See, e.g., United States v. Rodriguez De Varon*, 175 F.3d 930, 944 (11th Cir. 1999).

Hernandez also complains about the spill-over effect of inculpatory evidence. However, he has not pointed to any evidence that was admitted during the joint trial that would not have been admissible in a trial against him.

Finally, Hernandez asserts that only a severed trial would have brought his limited role to light, because he would have been able to testify as to his role in the offense.   He had the opportunity to testify at this trial, but he declined to do so, and his assertion that he was somehow prevented from doing so is rebutted by the record, as discussed below.

---

[6]  Additionally, Hernandez's insistence that he played a limited role is not supported by the fact that no minimal or minor role adjustment was applied in his case.

In sum, Hernandez has not shown that a motion to sever, if made, would have been successful, or that the outcome of his trial would have been different had his trial been severed.   Therefore, he has shown neither deficient performance nor prejudice, and he is not entitled to relief pursuant to *Strickland*.

2.  <u>Right to Testify</u>

Although not identified as a stand-alone claim for relief, Hernandez alleges in his filings that his attorney did not allow him to testify at trial (*see* ECF No. 260 at 20, 22; ECF No. 271 at 5).

It is axiomatic that a criminal defendant has the right to choose whether to take the stand and testify in his own defense.   *Rock v. Arkansas*, 483 U.S. 44, 52 (1987); *United States v. Hung Thien Ly*, 646 F.3d 1307, 1313 (11th Cir. 2011).   The right is personal to the defendant and neither the court nor defense counsel can waive this right for defendant.   *Hung Thien Ly,* 646 F.3d at 1313 (citing *United States v. Teague*, 953 F. 2d 1525, 1532 (11th Cir. 1992)).   It is constitutionally deficient for counsel to refuse to accept a defendant's decision to testify, or to not provide the advice needed to render a defendant's decision knowing and intelligent.   *Hung Thien Ly*, 646 F.3d at 1313 (citing *Teague*, 953 F. 2d at 1533); *Gallego v. United*

*States*, 174 F.3d 1196, 1197 (11th Cir. 1999).   Hernandez's claim that counsel prevented him from testifying is refuted by the record.

After the Government rested its case the court noted, outside the presence of the jury, that the attorneys had advised that neither defendant wanted to testify (ECF No. 192 at 221).   The court then directly addressed the two defendants.   The court explained that they had a constitutional right to either testify, or not testify, and that the decision was entirely theirs (ECF No. 192 at 221–222).   After the court explained the defendants' rights to them, both Hernandez's counsel, Mr. Dingus, and the district judge separately and directly asked Hernandez whether he wanted to testify (*id.* at 223).   Each time he indicated he did not (*id.*).   Thereafter the defense rested without putting on any evidence (*id.* at 224).   After the jury was excused, the court inquired of the defendants if they were satisfied with their attorneys' representation and they each answered in the affirmative (*id.* at 231).

The trial transcript reflects a clear waiver of Hernandez's right to testify.   At no point did Hernandez do or say anything to suggest that counsel "prevented" him from testifying as he now claims.   Hernandez has offered no explanation for the contradiction between his statements at trial and the assertion in his § 2255 motion that his attorney did not allow him to testify.   Even his reply memorandum is bereft

of any explanation for these discrepancies.    Hernandez has not shown counsel was constitutionally ineffective.

## CONCLUSION

An evidentiary hearing is not necessary for this court to resolve Hernandez's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015).    Hernandez has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.    Therefore, the motion should be denied in its entirety.

### Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.    § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

(2000) (explaining how to satisfy this showing) (citation omitted).    Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."    If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.    The "Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 260) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 11<u>th</u> day of February 2020.

*/s/ Elizabeth M. Timothy*_____
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.    Any different deadline that may appear on the electronic docket is for the court's internal use**

**only, and does not control.    A copy of objections shall be served upon all other parties.    If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.